BRENT v. CHAS. H. LILLY CO.

(Circuit Court, W. D. Washington, N. D.   October 22, 1909.)

No. 1,760.

**1. SALES (§ 71*)—CONTRACTS—CONSTRUCTION.**

Plaintiff in Kentucky offered defendant in Washington blue grass seed at "$1.40 per bu., f. o. b. cars," to test 21 pounds to the measured bushel. The offer was accepted by wire, which plaintiffs acknowledged, and four days thereafter plaintiffs acknowledged defendant's confirmation of the order for seed "testing $21\frac{\#}{T}$ to the measured bushel at $1.40 per bushel ($14\#$) f. o. b. cars here." Defendants, on receiving this letter, corrected plaintiffs' statement as to amount, claiming that the order called for a car load and not for 325 bags, but made no claim as to the number of pounds which should constitute a bushel until after the seed was shipped. There was uncontradicted evidence that by custom prevailing in Kentucky and neighboring parts of the country the word "bushel" was understood to mean 14 pounds. *Held*, that the contract called for a delivery of seed testing 21 pounds to the measured bushel to be paid for at $1.40 per bushel weighing 14, and not 21 pounds.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 190; Dec. Dig. § 71.*]

**2. CUSTOMS AND USAGES (§ 14*)—CONTRACT—CONSTRUCTION.**

Where a contract for the sale of seed by correspondence plainly provided for payment at the rate of 14 pounds to the bushel, it must be so construed, though the custom of treating 14 pounds as a bushel did not prevail in the purchaser's locality.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 29; Dec. Dig. § 14.*]

**3. CONTRACTS (§ 147*)—CONSTRUCTION.**

Where there is doubt as to the meaning of a contract, the party will be held to that meaning which he knew the other party supposed the words to bear, if this can be done without making a new contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730–743; Dec. Dig. § 147.*]

**4. CONTRACTS (§ 170*)—CONTEMPORANEOUS CONSTRUCTION.**

Where parties to a contract of doubtful meaning have themselves given it a definite construction, this, in the absence of illegality or other controlling circumstance, will be adopted by the courts.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. § 170.*]

**5. ESTOPPEL (§ 52*)—EQUITABLE ESTOPPEL—ELEMENTS.**

A party who has induced another to act on a certain understanding cannot, after the other has acted, deny that understanding to the other's loss.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121–125, 127; Dec. Dig. § 52.*]

**6. TRIAL (§ 170*)—DIRECTION OF VERDICT.**

Where evidence was such that a verdict for defendant could not be sustained, the trial court properly directed a verdict for plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 390–395; Dec. Dig. § 170.*]

**7. SALES (§ 355*)—ACTION FOR PRICE—PLEADING—EVIDENCE.**

Where, in an action for the price of grass seed, no reference to the market price was made in the pleadings, evidence thereof was inadmissible to raise an inference that defendant would not have made the con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tract with plaintiff at the price named had its officers understood that 14. instead of 21, pounds was to constitute a bushel.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 355.*]

8. EVIDENCE (§ 461*)—PAROL EVIDENCE—WRITTEN CONTRACT.

Where a contract is in writing, the intention of the parties is to be gathered therefrom and from the surrounding circumstances; evidence of a party's uncommunicated intention being inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

At Law. Action by N. Ford Brent against the Charles H. Lilly Company. Judgment for plaintiff. On motion for a new trial. Denied.

E. M. Carr and Harold Preston, for plaintiff.
John H. Allen, for defendant.

DONWORTH, District Judge. This action is brought to recover the purchase price of a car load of Kentucky blue grass seed sold by plaintiff to defendant. There is no dispute as to the quantity or quality of the seed. The controversy turns on the construction of the contract of sale, and the only substantial question between the parties is how many pounds constituted a bushel within the meaning of the contract, which fixed the price at $1.40 per bushel. It is admitted that the seed delivered weighed 30,240 pounds. Plaintiff computing a bushel as 14 pounds, sues for the price of 2,160 bushels, amounting to $3,024, while defendant, computing a bushel at 21 pounds, contends that it is liable for only 1,440 bushels, amounting to $2,016. It does not appear that the seed was ever measured, and therefore the number of actually measured bushels contained in the shipment is unknown. Neither party claims that the number of bushels was to be determined, under the contract, by a measurement in fact.

At the close of all the evidence, the court peremptorily instructed the jury to find for the plaintiff for the full amount claimed. On this petition defendant assigns as grounds for a new trial (1) the instruction to find for plaintiff; and (2) the court's ruling excluding testimony offered by defendant to show the market price of that kind of seed at the time the contract was made. The first point involves a consideration of the entire case. The parties never had any oral negotiations, and the contract was entirely by correspondence. This began with the following communication (Plaintiff's Exhibit A):

"Paris, Ky., June 17, 1908.

"Mess. Chas. H. Lilly & Co., Seattle, Wash.—Dear Sirs: We offer you, for wire acceptance and if unsold 325 bags of fancy cleaned true Kentucky blue grass seed at $1.40 per bu., f. o. b. cars here. August, Sept. or October shipment. Samples of the new crop will not be ready before the first of August, but we will guarantee to deliver only new crop and that it will test 21 pounds to the measured bushel.

"Hoping to be favored with your order, we are
"Yours truly,                                    Chas. S. Brent & Bro."

The foregoing exhibit consists of a printed form with blanks filled by typewriting. The typewritten words are shown above in italics:

the remainder, including the signature, being printed. To this defendant answered by telegram (Plaintiff's Exhibit A½), as follows:

"Seattle, Wn., June 22nd, Chas. S. Brent & Bro. Book order one minimum car Kentucky blue grass yours seventeenth     The Chas. H. Lilly."

This telegram was acknowledged by plaintiff the next day by the following letter (Plaintiff's Exhibit S):

"Paris, Ky., June 23, 1908.

"The Chas. H. Lilly Co., Seattle, Wash.—Gentlemen:   Your telegram of the 22nd accepting our offer of one car load fancy cleaned Ky. blue grass seed, testing 21#, at $1.40 per bu. f. o. b. cars here came to hand late and we wired you promptly this a. m. acknowledging the order.   We now confirm the trade and await your advices.   Trust that you will let us know which month you prefer shipment, as the early shipments generally tax our capacity and we do not want to delay your shipment if you wish it to go early.

"Thanking you for the order and awaiting your further advices, we are "Yours very truly,                          Chas. S. Brent & Bro."

On sending its telegram of June 22d, defendant immediately confirmed it by mailing to plaintiff one of its printed forms of purchase contract (Plaintiff's Exhibit B), on which were typewritten after the words "ship when" the words "Aug.—Sept.—Oct.—1908.   Our option," and below, in the body of the page, appears the following:

"One minimum car new crop fancy cleaned true Kentucky blue grass seed weighing 21 lbs. to the bushel $1.40 per bushel f. o. b. cars Paris, Ky.   Per your quotation June 17th.   Confirming our wire to you this date as follows: 'Book order one minimum car Kentucky blue grass yours seventeenth.'   Please acknowledge."

This is signed by defendant per Mr. Leckenby, the manager of its seed department.   On receipt of this plaintiff wrote to defendant as follows (Plaintiff's Exhibit E):

"Paris, Ky., June 27, 1908.

"The Chas. H. Lilly Co., Seattle, Wash.—Gentlemen:   Yours of the 22nd (Your No. 7272) confirming purchase of blue grass seed from us duly to hand and seems to be correct.   325 bags fancy cleaned true Kentucky blue grass seed, testing 21# to the measured bushel, at $1.40 per bu. (14#) f. o. b. cars here.

"While the shipment is optional with you as to Aug., Sept., or October, yet we would like for you to express your preference now so that there will be no delay in making the shipment when you want it.   You understand that we are generally very much rushed during these months and would not like to sell to others up to capacity for August and then learn that you wanted your car shipped that month.

"Awaiting your further favors,
"Yours very truly,                          Chas. S. Brent & Bro."

Five days later defendant answered the foregoing letter as follows (Plaintiff's Exhibit F):

"Seattle, 7-2-08.

"Chas. S. Brent & Bro., Paris, Kentucky—Gentlemen:   Answering your favor of the 27th, we wish to correct your understanding of our order.   This called for minimum car of 15 tons and not for 325 bags.

"We would like to have shipment between August 15th and September 15th, providing new crop is harvested by that time, but notify us and send sample before shipping so that we will be ready to take care of the seed.

"Yours truly,                               The Chas. H. Lilly Co.
"FL/Il.                                By Frank Leckenby, Vice Pres."

The further correspondence up to the time that the car load of seed was shipped relates to details not now material. On August 22d plaintiff loaded the seed on a Louisville & Nashville Railroad car at Paris, Ky., and mailed to defendant an invoice for 2,160 bushels at $1.40, amounting to $3,024, at the same time sending through bank a sight draft for that amount on the defendant at Seattle with the bill of lading. When this invoice reached the defendant, it immediately wrote to plaintiff, claiming that it should be charged with only 1,433⅓ bushels (a clerical error meant for 1,440 bushels), and refusing to pay the draft. Further correspondence ensued. The draft was never paid, and it does not appear that the bill of lading ever came into possession of defendant. Defendant's evidence tends to show that, after the car reached Seattle, the seed was unloaded into defendant's warehouse and sold through some misunderstanding of subordinate employés without the knowledge or consent of their superiors.

Plaintiff introduced the depositions of numerous seed dealers doing business in different parts of the United States, who testified that at the time of this transaction, and for a long time before, it was the custom of wholesale dealers and jobbers in Kentucky blue grass seed throughout the United States and Europe to treat 14 pounds of such seed as a bushel, and that when the word "bushel" was used in this connection by jobbers and dealers it meant invariably 14 pounds. Evidence was introduced by the defendant tending to show that this custom did not exist west of the Missouri river, and particularly did not exist in the city of Seattle or the state of Washington, and that in this market the custom was to buy and sell by pound only. Undoubtedly, if the question of the existence of this custom and its generality, so as to make it binding upon the defendant merely as a custom, is an open question between the parties, the case should have been submitted to the jury on that issue. I feel satisfied, however, that in reason and justice, as well as law, the correspondence precludes the defendant from disputing the claim of the plaintiff that 14 pounds of seed constituted a bushel according to the terms of the contract. The evidence is entirely uncontradicted that the custom claimed by the plaintiff prevailed in the state of Kentucky and throughout all the neighboring parts of the country. There can be no question but that the plaintiff at all times understood the contract to call for 14 pounds to the bushel. The contrary is not seriously contended by defendant. Now in his letter of June 27th to the defendant (Plaintiff's Exhibit E) plaintiff expressly defined a bushel as being 14 pounds; and, while defendant acknowledged the receipt of this on July 2d (Exhibit F), and corrected plaintiff's understanding of the contract in other respects, it made no objection to, or criticism of, this feature of plaintiff's letter. Conceding that defendant was not bound by any notice of the custom defining a bushel as 14 pounds in first placing its order, it was fully informed of plaintiff's understanding to that effect when it received plaintiff's letter of June 27th. Taking defendant's contention at its best, and assuming that, when sending its first telegram, it expected 21 pounds to the bushel (which is not at all clear when plaintiff's offer of June 17th is read in the light of all the evi-

dence), the most that would follow would be that there was no meeting of minds, and therefore no contract as a result of the first exchange of communications. But defendant, having received the letter of June 27th, allowed plaintiff to rest under the belief that it acquiesced in the construction of the contract fixing a bushel at 14 pounds until after the seed had been delivered on the railroad car, and had started on its westward journey. Further, the evidence shows that defendant was the largest seed dealer in the northwest, and perhaps the largest on the Pacific Coast. It had for a number of years issued an annual seed catalogue, and in listing Kentucky blue grass seed its catalogue had invariably referred to a bushel as 14 pounds. It is very likely true, as claimed by defendant, that this was merely intended to inform farmers and others sowing the seed that 14 pounds by weight should be sown where the directions called for the sowing of a bushel. It is to be noted, however, that regardless of the quality of the seed (it being undisputed that the better the quality the greater the weight of a measured bushel) 14 pounds is invariably designated as a bushel in defendant's catalogues. The evidence makes it clear that persons desiring to buy blue grass seed intelligently must be informed of the weight per measured bushel for the purpose of testing the quality of the seed, whether it is to be sold by the pound or by the bushel. It is apparent that, since the increased weight per measured bushel is brought about by cleaning the seed from chaff and similar waste, a greater weight shows a better quality, and therefore the weight per measured bushel is an important fact, regardless of the method of computing quantity. An experienced seed dealer knowing these facts could not have been misled as to the meaning of the letter of June 27th.

Construing the entire correspondence in the light of the undisputed evidence, I have no hesitation in concluding that the defendant is bound, especially in view of the letter of June 27th, to treat 14 pounds as a bushel. My attention has not been called to any statute of the state of Kentucky defining the number of pounds constituting a bushel of blue grass seed in that state. The contract was to be performed there, but no statute of that state bearing on the subject has been suggested, and I do not base the ruling upon that ground. Neither do I sustain plaintiff's contention that the circumstances attending the unloading of the car at Seattle estop the defendant from disputing plaintiff's claim, as that question should be left to the jury if the other circumstances mentioned did not conclude the matter. There are several principles of law which, when applied to the facts of this case, require that plaintiff should have judgment for his claim. (1) Where there is doubt as to the meaning of a contract, a party will be held to that meaning which he knew the other party supposed the words to bear, if this can be done without making a new contract for the parties. (2) Where the parties to a contract of doubtful meaning have themselves given it a definite construction, this, in the absence of illegality or other controlling circumstance, will be adopted by the courts. (3) A party who has induced another to act on a certain understanding cannot, after the other party has acted, deny that understanding to the other's loss.

174 F.—56

In the federal courts, before submitting a case to the jury, there is always a question for the court as to the sufficiency of the evidence to justify a verdict. In whatever aspect I view this case I feel that a verdict in accordance with defendant's contention should be set aside as contrary to the law and right of the case. I therefore hold that there was no error in instructing the jury to find a verdict for the plaintiff.

On the second error assigned, defendant urges that it should have been permitted to show the market price of seed of this character at the time the contract was made for the purpose of raising the inference that defendant would not have made the contract with plaintiff for a bushel of 14 pounds at the price named. No reference to the market price was made in the pleadings, and plaintiff could not be expected to be prepared to meet evidence on that point, even if it could be considered admissible under any circumstances. It is sufficient to say that, even if defendant had been allowed to introduce such evidence, it would not have affected the reasons hereinbefore stated which require a judgment for plaintiff.

On the argument on this petition, reference is made to the remarks of the court at the trial touching the admissibility of evidence concerning the intention of the parties. I do not think these remarks can be misunderstood. Where a contract is entirely in writing, as in this case, the intention of the parties must be gathered from the writings and from the surrounding circumstances. It is not competent for a party to testify as to what intention existed in his mind when he has not communicated that state of mind to the other party. What was said by the court on that subject merely expressed this idea.

For the reasons stated, the petition for a new trial is denied.